UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 13-20488-Civ-COOKE/TURNOFF

TOW TELL MARINE SERVICE, LLC.,

    Plaintiff,

vs.

M/V 28' SPENCER, *et al.*,

    Defendant.

_____/

**ORDER GRANTING DEFENDANT'S
MOTION TO DISMISS AMENDED COMPLAINT**

THIS MATTER is before me on Defendants', M/V 28' Spencer ("Spencer") and Martin Pilafian ("Pilafian"), Motion to Dismiss Plaintiff's Amended Complaint. ECF No. 10. I have reviewed the arguments, the record, and the relevant legal authorities. For the reasons provided in this Order, Defendant's Motion to Dismiss is granted.

**I. BACKGROUND**

Plaintiff's, Tow Tell Marine Service, LLC. ("Tow Tell"), Verified Amended Complaint ("Complaint") in Admiralty asserts causes of action against Spencer, a vessel, and Pilafian, owner of said vessel, for a salvage award, and for "special compensation" under Article 14 of the 1989 International Convention on Salvage ("Salvage Convention"). Am. Comp. ¶¶ 27-28, ECF No. 9.

The following facts are taken from Tow Tell's Complaint. On July 27, 2011, at the mouth of Bear Cut near the coast of Miami-Dade, the Spencer encountered high seas, which swamped the vessel and caused it to capsize. Am. Comp. ¶ 8. Tow Tell, a professional salvage assistance company, heard the distress call and dispatched two

vessels from its rescue fleet to respond. *Id.* ¶¶ 10-11. Tow Tell was able to right the vessel, de-water the hull, and safely tow the vessel to its base of operations. *Id.* ¶ 13. Tow Tell alleges that its action prevented the release of approximately 250 gallons of gasoline and oil, from within Spencer's hull, from damaging the ecosystem in and around Virginia Key and Key Biscayne. *See id.* ¶¶ 9, 16, 24.

After salvaging the Spencer, Tow Tell contacted Pilafian, owner of the Spencer, for instructions regarding the future care of the vessel. *Id.* ¶ 18. Pilafian instructed Tow Tell to take the vessel out of the water and to store it until he could recover it. *Id.* ¶ 19. The Spencer is still under Tow Tell's possession, as Pilafian has refused to take possession of the vessel. *See id.* ¶ 22; Mot. to Dismiss Am. Comp. 2. Tow Tell alleges that the post-casualty value of the Spencer, her engines, tender, tackle, appliances, appurtenances, furniture, gear, and all other necessaries is $500.00. *Id.* ¶ 14. Pilafian has made no payments for the services rendered by Tow Tell. *Id.* ¶ 23.

On April 30, 2013, Defendants moved to dismiss Tow Tell's Complaint for failure to state a cause of action. Mot. to Dismiss Am. Comp. 1-3. Tow Tell filed a Response to Defendants' Motion to Dismiss, ECF No. 13, and Defendants filed a Reply, ECF No. 14.

## II. LEGAL STANDARD

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When considering a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court must accept all of the plaintiff's allegations as true and construe them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d

2

1282, 1284 (11th Cir. 2008).  A plaintiff must articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (abrogating *Conley v. Gibson*, 355 U.S. 41 (1957)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  Detailed factual allegations are not required, but a pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of the cause of action will not do."  *Id.* at 1949 (quoting *Twombly*, 550 U.S. at 555).  A complaint's factual allegations must be enough to raise a right to relief above speculative level.  *Id.*

The purpose of a motion to dismiss is to test the facial sufficiency of a complaint. *See Hermoza v. Aroma Restaurant, LLC*, No. 11-23026-CIV, 2012 WL 273086, at *1 (S.D. Fla. Jan. 30, 2012).  Therefore, a court's consideration when ruling on a motion to dismiss is limited to the complaint and any incorporated exhibits.  *See Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000).

### III. ANALYSIS

Plaintiff's Complaint does not contain counts, but asserts causes of action against Defendants for "special compensation" under Article 14 of the Salvage Convention, and for a "high order salvage award" with interest, costs, reasonable attorney fees, and pre-judgment interest.  *See* Am. Comp. ¶¶ A – H.

### A. Special Compensation under the Salvage Convention

Plaintiff alleges that by virtue of having prevented the spill of 250 gallons of gasoline and oil, it is entitled to special compensation in accordance with Article 14 of the Salvage Convention.  *See* Am. Comp. ¶ 28.  Defendants, on the other hand, argue that

3

Plaintiff is not entitled to an award based upon environmental salvage. Mot. to Dismiss Am. Comp. 3-3. Under the circumstances of this case, I agree that Plaintiff is not entitled to special compensation pursuant to Article 14.

A substantial search of maritime cases, treatises, and secondary sources has demonstrated that in most salvage cases, the parties do not invoke and the U.S. courts do not mention the Salvage Convention. Yet, the Salvage Convention, signed in 1989, came to force internationally and became part of the law of the United States on July 14th, 1996. *See* Martin Davies, *Whatever Happened to the Salvage Convention 1989?*, 39 J. MAR. L. & COM. 463, 463 n.1 (2008)[1].

Under Article 14 of the Salvage Convention a salvor is entitled to "special compensation":

> 1. If the salvor has carried out salvage operations in respect of a vessel which by itself or its cargo threatened *damage to the environment* and has failed to earn a reward under article 13 at least equivalent to the special compensation assessable in accordance with this article, he shall be entitled to special compensation from the owner of that vessel equivalent to his expenses as herein defined.

International Convention on Salvage, Apr. 28, 1989, S. Treaty Doc. No. 102-12, 1953 U.N.T.S. 193 [hereafter Salvage Convention] (emphasis added). Article 1 of the Salvage Convention defines "damage to the environment" as a "*substantial* physical damage to human health or to marine life or resources in coastal or inland waters or areas adjacent thereto, caused by pollution, contamination, fire, explosion or similar **major** incidents." Salvage Convention 1989, Art. 1 (emphasis added).

---

[1] As a self-executing treaty, since it creates privately enforceable rights by its own terms, the Salvage Convention became part of U.S. law without the need for Congress to pass implementing legislation. *See id.* at 463-64, 463 n.3.

The Salvage Convention leaves the term "substantial" open for judicial interpretation.  *See* Archie Bishop, *The Development of Environmental Salvage and Review of the London Salvage Convention 1989*, 37 TUL. MAR. L.J. 65, 69 (2012).  The consensus between maritime law scholars seems to be that "substantial" signifies a more "general damage," which was not meant to include small incidents.  Geoffrey Brice, MARITIME LAW OF SALVAGE, ¶¶ 6-99 – 6-100 ("A drum of oil dropped overside causing very limited pollution was not what was intended.  On the other hand a drum of highly toxic chemicals threatening (say) personal injury or damage to human or wildlife on a fairly ***large scale*** was intended to be covered.") (emphasis added).  The emphasis on "major" and "substantial" indicates that the drafters of the Salvage Convention were not concerned with small-scale pollution, but were interested in covering damage of a widespread nature.  Nicholas J.J. Gaskell, *The 1989 Salvage Convention and the Lloyd's Open Form (Lof) Salvage Agreement 1990*, 16 TUL. MAR. L.J. 1, 6 (1991).  Furthermore, under Article 14 the emphasis is not on how large or small an act of, say, pollution or fire may be, but on the fact that the damage must be substantial and not of a minor nature.  Francis D. Rose, KENNEDY AND ROSS THE LAW OF SALVAGE, 194-95 (6th ed. 2002).

Additionally, arbitrators have considered the meaning of "substantial" under the Salvage Convention on several occasions.  *See* Archie Bishop, *The Development of Environmental Salvage and Review of the London Salvage Convention 1989*, 37 TUL. MAR. L.J. 65, 69 (2012).  While their opinions are not binding, they provide guidance as to what the drafters of the Salvage Convention meant when they refer to "substantial" damage to the environment.  A Lloyd's Open Forum (LOF) appeal arbitrator decided in a recent case that the damage prevented by the salving of the CASTOR (which was laden

5

with 30,000 tons of petroleum and 100 tons of heavy fuel oil) was not "substantial" under Article 14 of the Salvage Convention. *See id.* at 70. The arbitrator found that the damage prevented by the salvor would not have significantly depleted the fish stock and bird population of the location, and could not be considered a "substantial physical damage to marine life." *Id.*

While the Plaintiff might have reasonably perceived that the grounding and consequent leakage of the Spencer would have caused some environmental damage, it is not the type of *substantial* damage that the Salvage Convention meant to cover. In light of the intention of the drafters of the Salvage Convention, and the definition of "substantial" given by arbitrators and maritime scholars, I find that the potential spill of merely 250 gallons of gasoline and oil does not rise to the level of "substantial physical damage" that classifies as environmental damage under Article 14. Therefore, Plaintiff's allegations regarding the threat of a spill of 250 gallons of gasoline and oil are insufficient to bring its claim within the ambit of Article 14 of the Salvage Convention. Accordingly, Plaintiff's claim for "special compensation" is dismissed with prejudice.

### B.  Salvage Award

Defendants move to dismiss Plaintiff's claim for a salvage award because the salved value of the vessel serves as ceiling for the maximum allowable total award and because Defendants have given title of the vessel to Plaintiff. Mot. to Dismiss Am. Comp. 2. Based on the allegations in the Complaint, Plaintiff has failed to demonstrate that he is still owed a salvage award.

In order to obtain a salvage award Plaintiff has the burden of proving: "(1) a maritime peril from which the ship . . . could not have been rescued without the salvor's

assistance; (2) a voluntary act by the salvor under no pre-existing official or contractual duty to the owner; and (3) success in saving, or in helping to save at least part of the property at risk." *Klenner v. M/Y EL PRESIDENTE*, 11-60642-CIV, 2012 WL 3150050, at *11 (S.D. Fla. 2012) (citing *Fine v. Rockwood*, 895 F.Supp. 306, 309 (1995)). Additionally, the reward shall not exceed the salved value of the vessel. Salvage Convention, Article 13.3; *see also Platoro Ltd., Inc. v. Unidentified Remains of a Vessel*, 695 F.2d 893, 904 (1983) ("It is a general principle of property salvage law that the award should not exceed the value of the *res* as recovered . . . even where the salvor's expenses exceed the value of the *res*."); *Ocean Servs. Towing & Salvage, Inc. v. Brown*, 810 F. Supp. 1258, 1264 (S.D. Fla. 1993) ("The salved value generally serves as a ceiling for the maximum allowable total award.").

      Plaintiff's Complaint states all the elements of a salvage claim. Am. Comp. 24-29. Plaintiff, however, is only entitled to a salvage award for the "value of the *res* as it was recovered," even if Plaintiff's expenses exceeded the value of the recovered vessel. From the face of the pleading, it is unclear whether the Plaintiff has legal title over the Spencer or merely possession of it. Am. Comp. ¶ 22. In its Response to Defendants' Motion to Dismiss, Plaintiff admits that it received title of the vessel through the mail. Resp. to Mot. to Dismiss Am. Comp. 6. Plaintiff, however, did not amend its Complaint to reflect that it has now title of the Spencer, and not just mere possession over it. Accordingly, this case will only proceed to the extent that Plaintiff does not have title to the Spencer.

7

### IV. CONCLUSION

For the aforementioned reasons, it is hereby **ORDERED and ADJUDGED** as follows:

1. Defendant's Motion to Dismiss Plaintiff's Amended Complaint, ECF No. 10, is **GRANTED in part** to the extent that Plaintiff's claim for relief under Article 14 of the Salvage Convention is **DISMISSED**.

2. This case will only proceed to the extent that Plaintiff seeks title to the vessel. Plaintiff has ten (10) days from this Order to file evidence that it lacks legal title over the Spencer. Failure to comply will result in sanctions, including the dismissal of this action.

**DONE and ORDERED** in chambers at Miami, Florida, this 27th day of October 2013.

_____
MARCIA G. COOKE
United States District Judge

Copies furnished to:
*William C. Turnoff, U.S. Magistrate Judge*
*Counsel of record*